## WARREN BROWN *vs.* JAMES THOMPSON.

*Chattel mortgage with sealed writing on back — construction of.    Unstamped*
*instrument — when not invalid.*

In January, 1869, McNeill and Swett gave the plaintiff their note secured by a
    mortgage of all the stock in trade, in the store occupied by the mortgagers on
    Point street, in Calais; "also, any and all additions that may, from time to
    time, be made to said stock by" the mortgagers. In May, 1869, the unsold
    original stock, together with additions theretofore made and remaining unsold,
    was removed to another store by the mortgagers, who executed under their
    hands and seals on the back of the mortgage a writing duly recorded, therein
    agreeing that the "mortgage, with this indorsement thereon, shall cover the
    portion of said stock removed, the same as though it had remained in the
    former store, and that it shall hold and cover any and all additions that
    have been or may be made to the same, as though the stock had remained

and been put into the former store." In trespass by the mortgagee, against an officer for attaching the goods in July, 1869, as the property of the mortgagers, *Held*, that the mortgage, with the indorsement thereon, gave to the plaintiff a title to the stock in the second store at the time of the indorsement.

To authorize the court to declare an unstamped recorded indorsement on a chattel mortgage to be "invalid and of no effect," it must affirmatively appear that the omission of the stamp was the result of an attempt to evade the statute.

ON REPORT.

TRESPASS DE BONIS against an officer who attached the goods in question, as the property of Edward NcNeil and Charles N. Swett, July 5, 1869.

In support of his title, the plaintiff put in evidence a chattel mortgage, dated Jan. 23, 1869, and duly recorded, given by Mc-Neil and Swett, to the plaintiff, to secure three thousand, three hundred and seventy-four dollars. The description of the goods was,—" all the stock in trade in the store now occupied by Edward McNeil, in Calais, on Point street ; said stock consisting of cloths and ready-made clothing, dry goods, furnishing goods, hats, and caps, and such other articles as are usually kept in a clothing store ; also, any and all additions that may from time to time be made to the said stock by the said McNeil and Swett," etc.

The plaintiff put in also a writing on the back of the mortgage, dated May 10, 1869, and duly recorded, signed and sealed by Edward McNeil and Charles N. Swett, of the following tenor :

" Whereas, a portion of the stock of goods which is embraced in the within mortgage, and covered by the same, has been removed from the store of William Brown, on Point street, in Calais, to the store of Frank Williams, on Union street, in said Calais. It is hereby agreed by the within-named parties, Edward McNeil and Charles N. Swett, and Warren Brown, that this mortgage with this indorsement thereon, shall cover the portion of said stock of goods that has been removed to said Williams' store, the same as though said goods had remained in the store of said William Brown, and also agree, that it shall hold and cover any and all additions that have been or may be made to the same, to hold precisely the same as though the stock had remained and put into the store of said Brown on Point street."

The defendant contended, among other things, that the writing was inoperative for the want of a revenue stamp, and should not have been recorded.

The presiding judge ruled, "That the mortgage, with the writing on the back, gave to the plaintiff a title to the stock in trade in the Williams' store, May 10, 1869." If the ruling was correct, the defendant to be defaulted, and damages assessed by the judge at *nisi prius*.

*John H. French*, for the plaintiff.

*Granger & Whidden*, for the defendant, cited *Pratt* v. *Chase*, 40 Maine, 269; *Chapin* v. *Cram*, 40 Maine, 560; *Morrill* v. *Noyes*, 56 Maine, 458; *Jones* v. *Richardson*, 10 Met. 493; *Henshaw* v. *Bank of Bellow's Falls*, 10 Gray, 568.

TAPLEY, J. In this case a mortgage, with an instrument executed upon the back of it, was introduced as evidence of title. Upon the legal effect of the two instruments, the presiding judge was requested to rule and did rule, "that the mortgage, with the writing on the back, gives to the plaintiff a title to the stock in trade in the Williams' store, May 10, 1869." The only question here presented is the correctness of this ruling. The mortgage, and all indorsements and certificates thereon, make a part of the case.

By recurring to the mortgage it will be found to be a mortgage of all the stock in trade in the store now occupied by Edward McNeil in said Calais, on Point street, consisting of cloths, etc., etc.; also, any and all additions that may from time to time be made to said stock, etc., etc. This mortgage was made January 23, 1869, and was made to secure the payment of thirty-three hundred and seventy-four dollars. On the 10th of May, 1869, such of the goods as remained unsold, and such additions to the stock as had in the *interim* been made were removed from the store on Point street to another store on Union street. Thereupon the writing found upon the back of the mortgage was made and recorded the next day in the city registry.

No one reading the original mortgage and instrument written on the back thereof, can doubt that its purpose was to create a lien upon all the goods thus moved as a security for the mortgage debt.

No question is made that the mortgage when made (Jan. 23, 1869) created such a lien upon the goods then in the Point street store, nor is it assumed that their removal to the Union street store in anywise affected this lien. The controversy arises as to the additions which had been made since the making of the mortgage, and prior to the making of the new writing on May 10, 1869.

As to these goods, the original mortgage provided that they should be held as a security for the mortgage debt as they were from time to time added to the stock. Without determining at this time whether this of itself did create a lien upon the goods which would be valid against an attaching creditor, we direct attention to the instrument of May 10, 1869, upon the back of the mortgage, and there we find, in reference to these goods, an agreement of all the parties then interested, that this mortgage " shall hold and cover any and all additions that have been made to the same." Here is a clear and unequivocal extension of the descriptive part of the mortgage, sufficient to cover in terms the goods in question. It is then provided that the same are to be held " precisely the same as though the stock had remained and put into the store of the said Brown on Point street." We think it quite apparent this provision relates to the conditions under which the goods were held, viz., as a security for the mortgage debt due upon the terms mentioned in the mortgage.

The writing has two elements in it noticeable, and indicative of an intention to fix a lien upon these additions. First, it extends the mortgage so that it shall hold and cover the goods in question. Secondly, having done this it provides they shall be held subject to the same defeasance as the other goods. Then, the instrument is executed and recorded with all the formalities of a mortgage of personal property.

Now if it should be held that the original mortgage was ineffectual as to the after-acquired goods, we find here an instrument con-

taining all the essentials of a conditional transfer, made upon good consideration and duly recorded some seventy-five days before the attachment relied upon as a justification.

It is suggested, however, that this instrument is invalid for the want of a revenue stamp. Under the decisions of this court referred to by both counsel, we think it sufficient to say that there is no evidence in this case to warrant that conclusion. We hold that the ruling of the presiding judge was right, and that under the agreement of the parties the entry must be,

*Defendant defaulted.*

*Damages to be assessed by the judge at nisi prius.*

APPLETON, C. J.; CUTTING, KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.